IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RASSAN M. TARABEIN,           *
                              *
     Plaintiff,               *
                              *
vs.                           *  CIVIL ACTION NO. 24-00328-JB-B
                              *
KATHERYN SCOTT, *et al*.,     *
                              *
     Defendant.               *

## REPORT AND RECOMMENDATION

Plaintiff Rassan M. Tarabein ("Tarabein" or "Plaintiff")
filed this Bivens action,[1] without the assistance of an attorney
(*pro se*). (Doc. 1).  The Court has federal question jurisdiction
pursuant to 28 U.S.C. § 1331.  This action has been referred to
the undersigned Magistrate Judge for appropriate action pursuant
to 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and
S.D. Ala. GenLR 72(b).  Because Plaintiff was granted leave to
proceed in this action without prepayment of fees (Doc. 5), his
complaint is subject to review, prior to service, under 28 U.S.C
§§1915(e)(2)(B) and 1915A. Upon careful review, it is **RECOMMENDED**
that this action be **dismissed without prejudice**, prior to service

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971), provides a cause of action against
a federal officer who, while acting under the color of federal
law, has violated the constitutional rights of an individual. See
Hardison v. Cohen, 375 F.3d 1262, 1264 (11th Cir. 2004) (citing
Bivens, 403 U.S. at 397).

of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted.

## I.    Background and Complaint Allegations.

On September 5, 2024,[2] Tarabein filed this action against Assistant United States District Attorneys (AUSA) Sinan Kalayoglu and Justin Roller[3], Special Agent Joseph Simmons, and former FBI agent and private forensic accountant Kathryn Scott (and her companies, Driftwood Investigations, LLC and Baldwin County Investigations, LLC) for damages[4] arising out of Tarabein's

---

[2] Plaintiff's complaint reflects that it was signed on September 5, 2024. (Doc. 1, PageID.15). Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. See <u>Garvey v. Vaughn</u>, 993 F.2d 776, 783 (1993). Absent evidence to the contrary, the Court must "assume that a prisoner delivered a filing to prison authorities on the date that he signed it." <u>Jeffries v. United States</u>, 748 F.3d 1310, 1314 (11th Cir. 2014).

[3] The complaint names AUSA Justin Roller as a "sub-ordinate AUSA" to AUSA Sinan Kalayoglu. (Doc. 1, PageID.13). Plaintiff alleges that AUSA Roller "executed the scheme of his supervisor defendant Kalayoglu." (<u>Id</u>., PageID.14). For purposes of this screening, the Court liberally construes the complaint and will thus consider the allegations asserted against AUSA Kalayoglu to also be asserted against AUSA Justin Roller.

[4] Tarabein requests the following relief: (1) compensatory damages for "the unlawful actions by Agent Simmons;" punitive damages "to punish Agent Simmons for his malicious conduct and to deter similar future actions by law enforcement;" declaration "that the actions of Agent Simmons violated" his constitutional rights; "an injunction prohibiting Agent Simmons from engaging in similar unlawful conduct in the future;" attorney's fees, costs, and expenses; and any other relief the Court deems just and proper. (Doc. 1, PageID.12).

criminal convictions.[5]  Tarabein claims these defendants violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments by conspiring to maliciously and wrongfully arrest, convict and imprison him. He broadly asserts that the defendants are liable for: "unlawful arrest," "unreasonable search and seizure of person," "illegal search and seizure of property," "fabrication of testimony and evidence," "abuse of power," "false evidence," and "judicial manipulations."

According to Tarabein, AUSUA Kalayoglu has been pursuing legal action against him since 2015. AUSA Kalayoglu succeeded, with the assistance of Kathryn Scott, in obtaining a multicount indictment against him in 2017. (Doc. 1, PageID.8; see also 17-cr-0090-KD-B at Docs. 1, 10).  Tarabein asserts that based on leniency promised by AUSA Kalayoglu, he plead guilty to two counts of the indictment (health care fraud and unlawful distribution of controlled substance), but AUSA Kalayoglu "contradicted his

---

[5] Plaintiff references criminal cases USA v. Tarabein, 17-cr-0090-KD-B (S.D. Ala.) and USA v. Tarabein, 22-cr-0074-JB-N (S.D. Ala.) in his complaint, and the Court takes judicial notice of these cases and the pleadings therein. See United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."); Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam) ("The district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)).

earlier assurances" and submitted a sealed sentencing memorandum with four exhibits that were not disclosed to [Plaintiff] . . . and demand[ed] severe penalties," namely a term of imprisonment of 60-months to run concurrently; one-year supervised release; and restitution in the amount of $15.1 million. (Doc. 1, PageID.6-8). Tarabein claims the restitution amount was determined based on "deliberate manipulations" of financial records by Kathryn Scott, including inflation of figures, misrepresentations of Plaintiff's bank accounts, fabrications of numbers, and submission of inaccurate information to deceive the court. (Id., PageID.6).

After Tarabein completed his term of imprisonment and was on supervised release, AUSA Kalayoglu filed a motion to resentence Plaintiff for alleged willful and knowing failure to pay restitution. (See 17-cr-0090-KD-N; Doc. 217). Following a March 31, 2022 evidentiary hearing on the matter, the Court found that Tarabein had willfully failed to pay restitution although he had the means to do so. (Id.; Doc. 231). The Court denied the Government's motion to resentence but modified the terms of Tarabein's supervised release.[6] (Id.; Doc. 231). The Court also ruled that it would consider Plaintiff's request to travel to Syria

---

[6] Subsequently, on May 6, 2022, the Probation Office filed a petition seeking revocation of Tarabein's supervised release. (17-cr-0090-KD-B; Doc. 243). The Court concluded that the petition was "premised on the same facts and evidence" which the Court had already considered, in ruling on the motion to resentence; thus, the petition was dismissed. (17-cr-0090-KD-B; Doc. 248).

to visit his mother if he prepaid one-year of restitution installments ($6,000) and $97,000 (based on evidence presented at the hearing that established that Tarabein possessed a cashier's check in the amount of $97,000). (Id.). The next day, Tarabein paid the full $103,000 to the Clerk of Court, and he was granted permission to travel to Syria. (See electronic docket entry dated 04/07/2022).

"On April 11, 2022, just before Dr. Tarabein was scheduled to leave the country, he claims AUSA Kalayoglu orchestrated his arrest at Pensacola National Airport under dubious pretenses, filing new fabricated charges to prevent his departure." (Doc. 1, PageID.8). According to Tarabein, FBI Special Agent Joseph Simmons participated in the "unlawful arrest and search of the plaintiff at Pensacola International Airport without proper authorization." (Id., PageID.10). Specifically, Tarabein claims that after Agent Simmons was denied a request for an arrest warrant, he contacted Officer Landy of the Pensacola Police Department, instructed her to seize Tarabein's luggage upon his arrest on April 11, 2022, and approved her usage of proceeding with normal police department canine sniffing procedures on all his seized luggage. (Id., PageID.10 (citing to 22-cr-0074-JB-N; Doc. 132 at 8)). After the canine sniff alerted to a single suitcase, an electronic search warrant application was submitted. (Id. (citing to 22-cr-0074-JB-N; Doc. 63-2)). Tarabein contends that while awaiting the search

warrant, the Pensacola Police Officer told him that, per Agent Simmons, he was being arrested for bank fraud. (Id. (citing to 22-cr-0074-JB-N; Doc. 132 at 56)). According to Tarabein, a state judge approved the warrant for search and seizure of items related to drug trafficking, and a search of Tarabein's luggage uncovered a counterfeit check, which was provided to the FBI. (Id.).

Based on Defendants' actions, Tarabein claims he was arrested at Pensacola International Airport, tried and convicted for violations of 18 U.S.C. §§ 1344(1) (bank fraud); 1001(a)(2) (false statement to an agency of the United States); 3615, 3664(m)(1)(A)(i) (criminal default); and 1028A(a)(1) (aggravated identity theft). (See 22-cr-0074-JB-N; Doc. 1, PageID.8; Doc. 86)).  At the time Tarabein initiated this current action, he was imprisoned for these crimes.[7]

Tarabein is suing Defendants for Fourth Amendment violations, alleging:

- Agent Simmons unlawfully arrested him at Pensacola International Airport without a valid arrest warrant and

---

[7] Following his conviction, Tarabein was sentenced to a term of 48-months imprisonment for his convictions (24 months as to Counts One, Two, and Three. 12 months as to Count Four to run concurrently. 24 months as to Count Five to run consecutively). (See 22-CR-0074-JB-N; Doc. 125). Thereafter, pursuant to 18 U.S.C. § 3582(c)(2), Tarabein's sentence was reduced to 36 months as to Counts One and Three only. (See 22-CR-0074-JB-N; Doc. 203).

Tarabein was released from imprisonment in April 2025. See https://www.bop.gov/mobile/find_inmate/byname(lasted visited June 5, 2025).

instigated an unlawful search of his luggage without proper legal justification (Doc. 1; PageID.10).

- AUSA Kalayoglu orchestrated wrongful arrests by using fabricated evidence and conducting illegal searches (Id., PageID.9).

- Kathryn Scott provided false, misleading, and fabricated evidence, resulting in the Plaintiff's wrongful arrest and detention. (Id., PageID.6).

In violation of his Fifth Amendment rights, he claims:

- AUSA Kalayoglu filed motions based on false pretenses, presented fabricated evidence, and manipulated legal proceedings to deny Plaintiff a fair trial. (Id., PageID.9).

- Kathryn Scott presented false testimony, misleading financial analyses, and fabricated restitution figures that led to Plaintiff's wrongful incarceration. (Id., PageID.7).

- Agent Simmons, "orchestrated false testimonies by presenting unexpected witnesses" who "offered unsupported and irrelevant allegations against the plaintiff, suggesting Simmons' intent to maliciously prosecute the plaintiff through fabricated evidence." (Id., PageID.10).

Tarabein also alleges Defendants "unfairly targeted" him "based on his race, religion, or national origin" and "fabricat[ed] charges and manipulat[ed] court proceedings" denying his right to equal protection under the constitution. (Id., PageID.4, 7, 9). Lastly, throughout his complaint, Tarabein broadly claims that Defendants have conspired to prosecute and harass him from 2015 to the present.

## II. Screening Standard.

Pursuant to the Prison Litigation Reform Act, this Court is required to screen or review Plaintiff's complaint to identify cognizable claims and to dismiss the complaint, or any portion of the complaint, "if the complaint - - (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b)(1), (2); see also § 1915(e)(2)(B)(i-iii). Dismissal for these reasons is mandatory rather than discretionary. See § 1915A(b) ("On review, the court shall identify cognizable claims or dismiss the complaint. . . ."); § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that" the claims are frivolous or fail to state a claim.).

A claim is frivolous "when it appears the plaintiff 'has little or no chance of success.'" Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citation omitted). A court may conclude a claim has little or no chance of success when the claim is "based on an indisputably meritless legal theory," when its "factual contentions are clearly baseless," or when the defendant is immune from suit. Neitzke v. Williams, 490 U.S. 319, 327 (1989).

A complaint may be dismissed for failure to state a claim upon which relief may be granted when it fails to "contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). This means a complaint must have sufficient factual allegations that "raise a right to relief above the speculative level" and the allegations must "show[] that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In reviewing the complaint, the Court liberally construes the plaintiff's allegations, holding them to a more lenient standard than those of an attorney. Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998). Furthermore, a court "accepts the complaint's factual allegations as true," Daker v. Ward, 999 F.3d 1300, 1307 (11th Cir. 2021), but does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 556 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

### III. Discussion.

In Bivens, the Supreme Court created "a remedy against federal officers, acting under color of federal law, that [is] analogous to the section 1983 action against state officials." Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995) (per curium). Specifically, the Supreme Court provided a remedy for a Fourth

Amendment violation arising from an unreasonable search and seizure, after federal narcotics agents forcibly entered and searched Bivens's home without a warrant and, without probable cause, arrested him on federal drug charges. 403 U.S. 388, 389. However, the Supreme Court has since made clear that <u>Bivens</u> is not an expansive doctrine. <u>See</u> <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 131, 135 (2017) (declaring that "expanding the <u>Bivens</u> remedy is now a disfavored judicial activity"). And, to date, <u>Bivens</u> has only been applied in <u>three</u> specific contexts: 1) an unreasonable search and seizure under the Fourth Amendment, 2) a gender discrimination claim under the Fifth Amendment, <u>Davis v. Passman</u>, 442 U.S. 228 (1979) (sex-discrimination claim brought by a former congressional staffer whose Congressman terminated her explicitly because he felt her position should be held by a man), and 3) a failure to provide adequate medical treatment claim under the Eighth Amendment, <u>Carlson v. Green</u>, 446 U.S. 14 (1980) (severely asthmatic inmate was denied transfer to an appropriate facility and mistreated after an asthma attack, leading to his death). "These three cases — <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." <u>Ziglar</u>, 582 U.S. at 131. As noted, in more recent cases, the Supreme Court has made clear that "recognizing a cause of action under <u>Bivens</u> is a disfavored judicial activity." <u>Egbert v. Boule</u>, 596 U.S. 482, 491 (2022)

(quotation marks and citation omitted); see id. at 489-502 (refusing to extend Bivens cause of action to a First Amendment retaliation claim, noting "that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts."); see also Hernandez v. Mesa, 589 U.S. 93, 101-02 (2020) (reiterating the holding from Ziglar and noting that any extension of this jurisdiction is disfavored); Mays v. Smith, 70 F.4th 198, 206 (4th Cir. 2023), cert. denied, 144 S. Ct. 1008 (2024) (refusing to extend Bivens cause of action to a Fifth Amendment procedural due process claim); Vega v. United States, 881 F.3d 1146, 1147 (9th Cir. 2018) (same); Aaron v. City of Lowell, 666 F. Supp. 3d 102, 130-31 (D. Mass. 2023) (collecting cases where Bivens was not extended to context of malicious prosecution, false statements to grand jury, false evidence for seizing assets, perjured statements in support of search warrant, etc.).

When evaluating a proposed Bivens claim, Ziglar sets out a two-step analysis for courts.  First, the court is to determine whether the case presents a "new context."

> If the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted;

> the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Ziglar, 582 U.S. at 139-40. Second, if the case presents a new context, the court should evaluate whether "special factors" militate against extending Bivens, with the pertinent question being whether Congress or the courts are more suited to determine whether a damages action can proceed. Id. at 136 ("A Bivens remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress.") (internal quotation marks and citations omitted)). The Supreme Court more recently indicated in Egbert that the two-part test can accurately be described as "a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. Such is the case where "Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure,'" Id. at 493 (quoting Ziglar, 582 U.S. at 137), and it is irrelevant if that remedy fails to provide complete relief. Id. The Court has left no doubt (in word or action) to its stance on expanding Bivens, warning "if we were called to decide Bivens today, we would decline to discover any implied causes of action in the Constitution," Id. at 502, and refusing to extend Bivens to any new context or new category of

defendants in over 44 years.[8]  See Johnson v. Terry, 119 F.4th at 847 ("In the 44 years since Carlson, the Supreme Court has over and over again refused to extend Bivens to any new context or new category of defendants.").

Here, the claims asserted by Tarabein all differ from the three recognized actions under Bivens, as they are brought against different categories of defendants, pursuant to different constitutional rights, and present completely different factual allegations.  For instance, Tarabein's Fourth Amendment claim, which relates most closely to Bivens itself, is drastically different.  While both involve a search and arrest, Tarabein's search was conducted pursuant to an arrest warrant,[9] whereas Bivens centered on an unreasonable search and seizure without a warrant.  This alone marks a meaningful difference taking it outside the realm of Bivens.  See, e.g., Senatus v. Lopez, 2022 U.S. Dist. LEXIS 186621, *12, 2022 WL 16964153, *4 (S.D. Fla. October 12, 2022) (citing to Cienciva v. Brozowski, No. 3:20-CV-2045, 2022 U.S.

---

[8]    The Eleventh Circuit has "taken to heart what the Supreme Court has said on this subject" and joined all its "sister circuits [who] have also stressed the need for caution, hesitancy, and reluctance when it comes to extending the Bivens decision. Johnson v. Terry, 119 F.4th at 850 (collecting cases from every circuit declining to extend Bivens).

[9]    The Court record confirms that Tarabein was indicted for the charges against him, arrested pursuant to issued warrants, and thereafter arraigned. See 17-cr-0090-JB-B, Docs. 1, 10, 13, 49; and 22-cr-0074-JB-N, Docs. 2, 8, 32, 34, 36).

Dist. LEXIS 126147, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (collecting cases, noting "that the presence of a warrant is a crucial difference in the Bivens new-context analysis because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in Bivens"). Furthermore, Tarabein is not suing federal narcotics agents, rather two prosecutors, one FBI special agent, one private individual, and two private corporations. See Quinones-Pimentel v. Cannon, No. 3:20-CV-01443-JAW, 2022 U.S. Dist. LEXIS 48109, at *26, 2022 WL 826344, at *24 (D.P.R. Mar. 17, 2022), aff'd, 85 F.4th 63 (1st Cir. 2023) (recognizing "it is well established that prosecutors are 'new defendants' that would expand Bivens) (listing cases); K.O. by & through E.O. v. Sessions, 2022 U.S. App. LEXIS 20984, at *11, 2022 WL 3023645, at *3 (D.C. Cir. July 29, 2022) (declining to extend Bivens to class of defendants because the plaintiff's claims implicated a new category of defendants). Finally, courts have found meaningful differences when the conduct at issue is something other than the warrantless search of a person in Bivens. Cf., Robinson v. Heinze, 655 F.Supp.3d 1276, 1281-82 (N.D. Ga. Feb. 3, 2023) relying on Bivins v. Rodriguez, No. 2:18-CV-2671-JAM-DMC-P, 2020 U.S. Dist. LEXIS 5586, at *11, 2020 WL 134115, at *4 (E.D. Cal. Jan. 13, 2020) (noting that "Bivens is primarily, and very particularly, concerned with the warrantless search of a person"), report and recommendation adopted, 2020 U.S.

14

Dist. LEXIS 80052, 2020 WL 2193259 (E.D. Cal. May 5, 2020).
Accordingly, Tarabein's challenges to his criminal investigation,
arrest, search, trial testimony and evidence presented, and
restitution amount are in stark contrast to the warrantless search
and seizure of Bivens by narcotic agents. Nor do Tarabein's due
process and equal protection claims bear any resemblance to the
Fifth Amendment sex discrimination case of Davis or Carlson's
Eighth Amendment medical claim. For these reasons, Tarabein's
asserted claims seek to present Bivens in a "new context." Ziglar,
582 U.S. at 138-40 (instructing that a different constitutional
right at issue would be a new context); see also Reichle v. Howards,
566 U.S. 658 (2012) ("We have never held that Bivens extends to
First Amendment claims."); Montalban v. Samuels, No. 21-11431,
2022 U.S. App. LEXIS 26366, at 9, 2022 WL 4362800, at *4 (11th Cir.
2022) (per curiam) ("The Supreme Court has not recognized a Bivens
cause of action for claims arising under the First . . . and
Fourteenth Amendments." The Court further noted that the Fifth
Amendment claims raised by the plaintiff "were meaningfully
different than the gender discrimination claim for which the
Supreme Court recognized a Fifth Amendment Bivens cause of
action.").

Because Tarabein's claims are meaningfully different from the
three Bivens cases that have allowed an implied damages action,
the Court must determine "if there are special factors indicating

that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." Johnson v. Terry, 119 F.4th 840, 851 (11th Cir. 2024) (quoting Egbert, 596 U.S. at 142 (quotation marks omitted). This "inquiry focuses on 'the risk of interfering with the authority of the other branches, and ... ask[s] whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy.'" Id. (quoting Hernandez v. Mesa, 589 U.S. 93, 102 (2020) (finding if any reason gives pause before applying Bivens in a new context or to a new class of defendants – the request should be rejected). And courts are instructed that "expanding the Bivens remedy is now a 'disfavored' judicial activity" because it impinges on "separation-of-powers principles." Robinson v. Sauls, 102 F.4th 1337, 1342 (11th Cir. 2024) (quoting Ziglar, 582 U.S. at 135); that a Bivens remedy will not be available if there are "'special factors counselling hesitation in the absence of affirmative action by Congress.'" Carlson, 446 U.S. 14, 18 (quoting Bivens, 403 U.S. at 396); and "[i]f there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." Johnson, 119 F.4th at 859 (quoting Egbert, 596 U.S. at 498).

Tarabein's complaint, as a whole, challenges his criminal conviction, by claiming Defendants conspired to convict and imprison him by maliciously and wrongfully arresting and searching

him, and by fabricating testimony and evidence to secure a conviction, sentence, and restitution. Congress has provided a remedy for those who are wrongly convicted and sentenced; they may seek release under 28 U.S.C. § 2255 or sue the government for damages,[10] see 28 U.S.C. § 1495 (creating a cause of action for damages "by any person unjustly convicted of an offense against the United States and imprisoned"). See also United States v. Abreu, 976 F.3d 1263, 1265 (11th Cir. 2020) ("In 1938, to provide a financial remedy for innocent persons who are wrongfully convicted

---

[10]  Though Tarabein has pursued post-conviction relief, none of his convictions have been overturned or vacated. See United States v. Tarabein, No. 23-11129, 2024 U.S. App. LEXIS 30045, 2024 WL 4892131 (11th Cir. Nov. 26, 2024) (affirmed the convictions of 22-cr-0074-JB-N). Notably, the Eleventh Circuit specifically addressed the set of facts currently before this Court and found no reversible error in the district court's admittance into evidence of the check seized from Tarabein's luggage at the Pensacola airport and a Wells Fargo bank statement. Indeed, it further found the evidence sufficient to support the convictions of bank fraud and two counts of false statements. Id. The appellate court also held that Tarabein did not show that his substantial rights were affected by the alleged error in the restitution amount to be entitled to relief under plain error review in 17-cr-0090-KD-B. United States v. Tarabein, 798 F. App'x 576 (11th Cir. 2020).

To the extent that Tarabein attempts through this Bivens action to raise any claim that would render or imply his conviction or sentence invalid, his claim is barred by Heck v. Humphrey, 512 U.S. 477, 484-85 (1994). To bring such a claim, he must first prove that the conviction or sentence has been reversed, expunged, or called into question by a federal court's issuance of a writ of habeas corpus. Heck, 512 U.S. at 486-87. A claim for damages based on a conviction or sentence that has not been so invalidated is not cognizable under Bivens. Id. at 487; see also Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995) (applying Heck to Bivens).

17

in federal courts, Congress enacted the Unjust Conviction Statute. *See* . . . 28 U.S.C. §§ 1495, 2513. Briefly stated, a person who obtains a certificate of innocence under § 2513 can seek damages from the United States in the Court of Federal Claims pursuant to § 1495. *See* § 2513(e) (authorizing a wrongfully convicted person to receive up to $50,000 for every 12 months of incarceration)." Furthermore, where it is believed that prosecution was decided based on an unjustifiable standard, such as race, religion, or national origin, Tarabein could have raised a selective or vindictive prosecution claim prior to trial.[11]  Accordingly, the government "has put in place safeguards to prevent constitutional violations [like those raised by Tarabein] from recurring," Johnson, 119 F.4th at 860 (quoting Egbert, 596 U.S. at 498); see id. (quoting Egbert 596 U.S. at 493 ("Importantly, the relevant question is not ... whether the court should provide for a wrong that would otherwise go unredressed ....") (quotation marks

---

[11]  While prosecutors have broad discretion in the decision of whether to prosecute and what charges to file or bring, they are constrained by the Constitution, including the equal protection component of the Due Process Clause of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 500 (1954). Indeed, the decision to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456 (1962).  Where the decision to prosecute was based on such an unjustifiable standard, a defendant may raise a selective prosecution claim.  "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." U.S. v. Armstrong, 517 U.S. 456, 463 (1996).

omitted)). Because "there is a remedial process in place that is intended to redress the kind of harm faced by those like [Tarabein]," id. at 860, the creation of a new Bivens remedy is barred. Furthermore, the costs of implying a cause of action here would expose federal officials to "the complex sphere of litigation," Ziglar, 565 U.S. at 136, and intrude on prosecutorial functions – while the benefits include "deterring misconduct, protecting the integrity of the criminal adjudicatory process, and preventing innocent people from being illegally detained." Farah v. Weyker, 926 F.3d 492, 502 (8th Cir. 2019). These are the types of competing policy concerns that the Supreme Court has warned courts against weighing. Stated another way, these are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," such that the Court, here, "must refrain from creating [a] remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction." Ziglar, 565 U.S. at 137.

Accordingly, the undersigned refrains from inferring new Bivens claims in the context of Tarabein's allegations against AUSAs Sinan Kalayoglu and Justin Roller, Special Agent Joseph Simmons, Kathryn Scott, and her companies, Driftwood Investigations, LLC and Baldwin County Investigations, LLC. These claims should be dismissed without prejudice for failure to state a claim for relief.

### IV.  Conclusion.

For the reasons discussed above, Tarabein has presented a new context of claims, meaningfully different from <u>Bivens</u>, such that <u>Bivens</u> is not applicable. Therefore, the undersigned **RECOMMENDS** that Tarabein's complaint be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A and § 1915(e)(2)(B)(ii).  The undersigned further recommends that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g).[12]

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the

---

[12]  Regardless of whether a dismissal is with prejudice or without prejudice, "the dismissal of a prisoner's civil lawsuit, for failure to state a claim, counts as a strike under the PLRA's three-strikes rule for IFP status."  <u>Lomax v. Ortiz-Marquez</u>, 590 U.S. 595, 603 (2020).

district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **6th** day of **June, 2025.**

                              /s/ SONJA F. BIVINS
                         UNITED STATES MAGISTRATE JUDGE